ELIZABETH MILLER AND OTHERS, *vs.* THE BOARD OF COMMISSIONERS OF PUBLIC SCHOOLS OF THE CITY OF BALTIMORE, AND DAVID STEWART, ADM'R OF HENRY MILLER. *December,* 1849.

An illegitimate child, whose parents never married, died intestate and without issue. HELD: that neither his mother nor her legitimate children, had any claim to his estate, under the act of 1825, ch. 156.

By the common law, bastards, having no inheritable blood, are incapable of taking as heir to the putative father, mother, or any one else.

The 7th section of the act of 1820, ch. 191, legitimates only where the parents subsequently marry, and recognise such child.

The act of 1825, ch. 156, only enables an illegitimate to inherit from the mother, and from illegitimate brothers and sisters.

Illegitimates cannot take from the legitimate, neither can the legitimate inherit from them.

Acts in derogation of the common law, must receive a strict construction.

Appeal from the Orphans court of *Baltimore* county.

The appeal in this case was taken by the appellants, from an order of said orphans court of the 5th of April, 1849, directing the administrator of *Henry Miller,* deceased, a bastard, to pay over to the *Board of Commissioners of Public Schools of the City of Baltimore,* the balance due the estate of said deceased,

under the act of 1845, ch. 120. The facts of the case are fully stated in the opinion of this court.

The cause was argued before DORSEY, C. J., SPENCE, MARTIN, and FRICK, J.

By T. P. SCOTT, for the appellants, and
By WM. F. FRICK, for the appellees.

FRICK, J., delivered the opinion of this court.

*Henry Miller,* who was an illegitimate child, died unmarried and without issue, in the year 1844, leaving his mother, two sisters and a brother, who claimed to be the representatives and distributees of his estate. The sisters and the brother are the legitimate children of the mother by her deceased husband, who was not, however, the father of said *Henry Miller.*

Letters of administration upon his estate were granted to *David Stewart,* executor, one of the appellants, from the orphans court of *Baltimore* county, and the balance in hand was by him submitted for distribution under the order of said court.

The act of Assembly of 1845, ch. 120, requires that the justices of the orphans court of *Baltimore* county shall direct the funds arising from the personal estates of persons of the city of *Baltimore,* who have died or may die intestate, and have not or may not leave legal representatives, to be paid to the board of commissioners of the public schools of the city of *Baltimore,* to the use and support of said schools. Under this act of Assembly, the commissioners of the public schools of *Baltimore* city filed their petition in the orphans court, claiming to be paid the funds in the hands of the administrator. On the other hand, the appellants resist this application, and claim as the legal representatives of the deceased, under the terms of the act of 1825, ch. 156. 1st. They all claim, the mother, sisters and brother, as distributees in equal proportions; or, 2nd. If the mother should be excluded by the terms of the act, then in equal parts between the sisters and brother.

17    v.8

The act of 1825, ch. 156. declares: "that the illegitimate child or children of any female, and the issue of such illegitimate child or children, be and are hereby declared to be capable, in law, to take and inherit both real and personal estate from their mother, or from each other, or from the descendants of each other, as the case may be; provided nothing herein contained shall be construed to alter or change the law respecting illegitimate persons whose parents marry after the birth of such persons, and who are by them acknowledged, agreeably to the 7th section of the act of 1820, ch. 191."

This section of the act of 1820, is but a reiteration of the same section, in the same words, of the act of 1786, ch. 45: "And be it enacted, that if any man shall have a child or children by any woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in virtue of such marriage and acknowledgment, be hereby legitimated, and capable, in law, to inherit and transmit inheritance, as if born in wedlock."

The decree of the orphans court being in favor of the commissioners of the public schools, from that decision the present appeal is taken to this court.

By the common law, bastards, having no inheritable blood, are incapable of taking as heir either to the putative father, mother, or any one else. In every well digested scheme of social and civil polity, it has always been a prominent object to prevent the mischiefs of illicit intercourse; and the fruit of such intercourse has been invariably blended and branded with the guilt of the parent. The infamy of the transgression descended to the child, while the estate of the parent passed over to the more distant kindred, or escheated to the State. Such was the policy of the common law, and so it remains in this State, with only such relaxation as the Legislature has engrafted upon it by the preceding act of Assembly. The bastard is still *nullius filius*. The sin of the parent still attaches to the child in this respect; but so far as the Legislature could justly temper the severity of the sentence, and regard the unoffending character of the offspring, they have done so. The act of 1786,

further confirmed in 1820, reserves to the guilty parents the *locus penitentiæ*. By marriage and subsequent adoption of the child, the sin is atoned for, and the penalty of the law remitted. The policy of the law is thus gratified, and the child to all intents and purposes, is here legitimated. So far, and on these conditions, the rule of the common law is repealed, that punishes the offspring for the guilt of the parent. Beyond this the Legislature refused to go, in 1820, or to alter one word of the act of 1786, upon the subject, while reducing into one system the acts relating to descents. Only where the atonement was public, by a marriage and subsequent recognition of the child, was the taint of blood and civil disability remitted. To remove this stigma, was no part of the design of the act of 1825. It does not propose to legitimate the offspring. So to construe it, would be a virtual repeal of the provision of the act of 1820. It would restore the disabilities of bastards, without either marriage of the parties, or open recognition of the offspring. It could not intend to make the illegitimate the legitimate child of the mother, for all purposes *de jure et de facto*. It is expressly directed to the children of parents, where marriage is supposed impracticable, and endows the child only with inheritable privileges *from* the mother. It recognises no father, and establishes, of course, no relation of brother and sister. And to preclude such possible construction, the proviso is added, retaining in full force the position of the 7th section of the act of 1820, that no such consequence shall result, but from subsequent marriage and adoption of the children.

The disqualification is, therefore, only so far removed as to enable an illegitimate to inherit from the mother, and from illegitimate brothers and sisters. If, from any cause, the parents never marry, the children remain illegitimate.

*Henry Miller*, then, being illegitimate born, and his parents never having married, the mother can have no claim under our statutes of distribution. It was manifestly the policy of the common law that she should not; for the sin there denounced, still attaches to her. To permit her to share in the distribution, unless it be within the express terms of the act, would be to

sanction, not discourage illicit connections. Such sanction is not to be found in the act. It simply declares, that the children being illegitimate, may inherit from her, and from each other, "as if born in wedlock." The favour bestowed, the relaxation made, is in behalf of the children, and to their benefit the act is restricted. They may not take from the legitimate, neither can the legitimate inherit from them. There is no reciprocity intended, and between these, the act recognises no such relation as brother and sister. The illegitimate is still, in contemplation of this act, *nullius filius.* Without a recognition of both father and mother, there can be no recognised brothers and sisters in law. The remedy for this is to be found in the act of 1820, where the parents are free to make retribution to society, and wipe from their offspring the stain and dishonor of their illegitimate-birth.

The act before us, is both humane and politic in its object. The illegitimate offspring is sufficiently degraded by the crime of the parents, and the stigma of the world, without being deprived of the only reparation that the circumstances may justify. The law may not restore the taint of blood but upon the conditions referred to. Still, while the relation of the mother to the child can always be rendered certain, no reason exists why the children should be left destitute of such relief as may be derived from the mother, or among themselves. So far the Legislature designed to abate the rigor of the common law, to relieve the innocent offspring from a portion of the penalty incurred by the sin of the mother. In this view the terms of the statute are plain and unambiguous, and all further inquiry into the intention of the Legislature, and the equity of the statute, is shut out. The words expressly restrict it to the relation there stated among the illegitimates, excluding the legitimates from any participation. The provisions of the act are in derogation of the common law, and for that reason, they must receive a strict construction. Neither of the parties, appellants here, can claim under it. The mother is incompetent, unless the disqualification has been removed by marriage, and the child legitimated for all purposes; and the brother and sisters, born in

wedlock and legitimate, have no claim to fraternity with the illegitimate, to whom the terms of the act exclusively refer. That the illegitimate cannot claim, under this act, to take the estate of a legitimate brother, has been heretofore decided in this court, in the case of *Medcalf vs. Daley and Jones*, (1845, manuscript,) and the converse of the proposition being equally true under the act, the decree of the orphans court of *Baltimore* county is affirmed

DECREE AFFIRMED.