(Decided 21st January, 1876.)

JOHN HAWBECKER, and others *vs.* SAMUEL HAWBECKER, and others.

*Construction of Statutes—Construction of Art.* 47, *sec.* 29, *of the Code, relating to the legitimation of children born out of Wedlock, whose parents subsequently Marry.*

It must be a very clear case of intent to justify a departure from the words of a law. It would be dangerous and unwarrantable for a Court to grope for an intent, or to make one from their own ideas of policy and morals, and on that ground say that a particular case is withdrawn from the operation of the plain and unambiguous language of a statute.

Hawbecker, *et al. vs.* Hawbecker, *et al.*

The 29th section of Art. 47, of the Code provides, that "If any man shall have a child or children by any woman whom he shall afterwards marry, such child or children, if acknowledged by the man, shall in virtue of such marriage and acknowledgment, be hereby legitimated and capable in law to inherit and transmit inheritance as if born in wedlock." HELD:

That this provision is not limited to the children of those who are capable of contracting lawful marriage, but extends to the issue of an adulterous connection.

APPEAL from the Circuit Court of Washington County.

The case is stated in the opinion of the Court.

The cause was submitted to BARTOL, C. J., STEWART, GRASON, MILLER, ALVEY and ROBINSON, J.

*Louis E. McComas* and *Daniel Weisel*, for the appellants.

*George Freaner* and *Attorney General Syester*, for the appellees.

MILLER, J., delivered the opinion of the Court.

An entirely novel question is presented by this appeal. It appears from the record that Christian Hawbecker had, by his wife Catharine, four children born in lawful wedlock. During the life of his wife he also had six children by another woman. His wife died in 1854 and in 1855 he was lawfully married to the mother of the last mentioned children. It is proved that after this second marriage he acknowledged these children as his, and treated them as he did the children of his first wife, and just as men treat their legitimate children. In 1873 he died intestate, seized of real estate which was sold for the purpose of partition amongst his heirs at law. A *pro forma* order was passed by the Court below ratifying an account which distributed

the proceeds of sale amongst *all* the children equally. From that order the children of the first wife have appealed.

These six children, of course, base their claim to inherit from their father upon the statute law. The 29th section of Art. 47 of the Code, an exact transcript of the 7th section of the Act of 1820, ch. 191, which was a re-enactment, in almost identical terms, of the 7th section of the Act of 1786, ch. 45, provides that. "If any man shall have a child or children by any woman, whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in virtue of such marriage and acknowledgment, be hereby legitimated, and capable in law to inherit and transmit inheritance as if born in wedlock."

Whilst it is conceded the terms of this statute are broad enough to embrace, and do in fact cover the case of these children, it has been very ably argued by the appellants' counsel that such offspring were not within the intent and meaning of the Legislature when they passed this law. Their argument is, that this provision was adopted and transplanted into our law from the civil law; that in all nations where that law prevails, and among whom the practice of legitimation by subseqent marriage obtains, the *status* of legitimacy as to children conceived and born at a time when their parents were under impediment to marry, is excepted, and such children are styled adulterine bastards; that the sentiment of civilized communities, and good morals sanction the legitimation of offspring by parents who are urged by every consideration of expediency and equity to a marriage, whereby what was at first irregular and injurious to society, is converted into the honorable relation of lawful matrimony, and those unseemly disorders in families where elder-born children of the same parents are left under the stain of bastardy, and the younger enjoy the status of legitimacy, are prevented; but this inducement could not be intended to influence such as are not in a present condition to marry, who

might be impelled to murder a husband or wife that adultery might cease, and thus render homicide a preliminary to the marriage ceremony; that all the surrounding circumstances, and the practice of all nations from whose jurisprudence the law was borrowed, as well as the moral aspects, must have been in the minds of the Legislature when they passed this law, and their intent in enacting it must have been, to induce those to marry who were under no impediment to do so, and thereby legitimate their offspring.

It is doubtless a sound and recognized rule that statutes should be construed with a view to the original intent and meaning of the makers, and such construction be placed upon them as best answers that intention, which may be collected from the cause or necessity of making the Act, or from foreign circumstances, and when the intent is discovered it ought to be followed, although such construction may seem to be contrary to the letter of the statute, and therefore that which is within the letter of a statute, is sometimes not within the statute, not being within the intention of the makers   4 *G. & J.*, 152.   But it must be a very clear case of intent to justify a departure from the words of the law.   It would be dangerous and unwarrantable for a Court to grope for an intent, or to make one from their own ideas of policy and morals, and on that ground, say that a particular case is withdrawn from the operation of the plain and unambiguous language of a statute.   But if put on search for the intention of those who framed and passed this law, we should be unable to reach the conclusion to which the appellants' counsel have endeavored to lead us.   The common law respecting bastards visited the infamy of the transgression of the parents upon their innocent offspring, and treated the latter as having no inheritable blood.   The injustice of this, in cases where the parents afterwards married, was so apparent, that at a very early period the law-makers of this State enacted this law

as a remedy for it, and did so by the very Act by which they abolished the common law rights of primogeniture. At a later period, by the Act of 1825, ch. 156, (Code, Art. 47, sec. 30,) it was further provided that illegitimate children, whose parents never married, and the issue of such children, shall be capable in law to take and inherit both real and personal estate from their mother and from each other, or from the descendants of each other, as the case may be, in like manner as if born in wedlock. And now, by the Act of 1868, ch. 199, it is provided that the mother and her heirs at law shall inherit from her illegitimate children, in case they shall die leaving no descendants or brothers or sisters or the descendants of such brothers and sisters. No doubt the Legislature, in thus mitigating the severe rule of the common law, intended to hold out to the sinning parents an inducement to marry, and thus put a stop to the mischiefs of further illicit intercourse between them, but in our opinion the main purpose and intent of the enactment we are now considering, was to remove the taint and disabilities of bastardy from the unoffending children, *whenever their parents did marry*, without regard to the deepness of guilt on the part of their parents, in which they were conceived and born. In the few cases in which these Acts have come up for judicial construction, the Courts have, in terms quite plain, intimated, if not clearly decided, that such was their purpose and object. That appears to us to be the purport of what was said by our predecessors in the case of *Miller vs. Stewart*, 8 *Gill*, 128 But it is more plainly and strongly stated by Ch. J. Taney, in delivering the opinion of the Supreme Court in the case of *Brewer vs. Blougher*, 14 *Pet.*, 178. In that case the question was whether the children of an incestuous connection of a most shocking character, could inherit from each other, and consequently whether the Act of 1825, ch. 156, applied to such a case. It was there urged as it has been here, that the Legislature in passing that

Act never contemplated such a case, and never intended to give the right of inheritance to the children of an intercourse so deeply criminal. But the reply was: "It is undoubtedly the duty of the Court to ascertain the meaning of the Legislature from the words used in the statute, and the subject-matter to which it relates; and to restrain its operation within narrower limits than its words import, if the Court *is satisfied* that the literal meaning of its language would extend to cases, which the Legislature never designed to embrace in it. In the case before us, the words are general, and include all persons who come within the description of illegitmate children. And when the Legislature speak in general terms of children of that description, without making any exceptions, we are bound to suppose they design to include the whole class. The expediency and moral tendency of this new law of inheritance is a question for the Legislature and not the Court. This right of inheritance would appear to have been given upon the principle, that it is unjust to punish the offspring for the crime of the parents. The right of the children, therefore, is not made to depend upon the degree of guilt of which they were the offspring. All illegitimate children are the fruits of crime; differing indeed greatly in its degree of enormity. And the Legislature if it had seen proper to do so might undoubtedly have made the right to the inheritance to depend upon the character of the offence committed by the parents. But they have used no language showing any such design. On the contrary, they appear to have looked at the unoffending character of the children, rather than at the criminal conduct of the parents of whom they were the offspring." This reasoning applies with equal force to the law now before us on the same subject. The Legislature has not seen fit to make any exception to its operation. Its terms embrace *every case* where "*any man* shall have a child or children by *any woman* whom he shall *afterwards marry.*"

The children of an intercourse adulterous on the part of the man, are no less innocent and unoffending than the offspring of any other illicit connection, and we cannot say the Legislature intended to exclude them from the benefit conferred on others, when the language used plainly includes them. Courts cannot put into a statute words which are not there, in order to carry out any ideas of policy, or morals, or expediency which they may entertain. Over these subjects, so far as they may affect or be affected by legislation, the Legislature has exclusive control.

> *Order affirmed, and*
> *cause remanded.*

