E. G. Johnson and Q. A. Gillmore, for defendant.

---

(Hamilton County Court of Common Pleas.)

## MARGARET C. McNICOLL V. CLARIBEL IVES.

*Legitimation of children—Acknowledgment of—Domicile—Construction of Sec. 4175 R. S.—Comity—Wills—The doctrine of Lex Rei Sitae.*

Under sec. 4175, Revised Statutes, where a man had, by a woman, children before marriage, whom after marriage to her he acknowledges as his own, such children are hereby rendered legitimate for all purposes, and this applies where the mother of such children was, at the time of their birth, married to another man, though not living with him.

Where it appears that the mother was a married woman living at the time of the birth of such illegitimate child in Kentucky, but that her father's domicile was in Ohio, and that after the marriage of her parents and after she was acknowledged by her father, she lived in Ohio with her parents, the domicile of the father by her legitimation, becomes her domicile.

Where in such a case the father desires his lands to the heirs of his body, such legitimated child will take the same as the other children born in wedlock. The rule of comity between the states does not extend to real estate.

(Decided March, 1895.)

---

KUMLER, J.

This is an action to partition real estate situate at the southwest corner of Fifth and Sycamore streets, in Cincinnati, O.

The plaintiff alleges in her petition that in the year 1852 her grandfather, Peter McNicoll, died, leaving a will which was duly admitted to probate in this county, in which will testator devised to his son, Henry McNicoll, said real estate for the term of his natural life, and at his decease to go to the "heirs of his body" in fee simple; that on the 19th day of December, 1893, Henry McNicoll died, leaving as the sole heirs of his body, the plaintiff, Margaret C. McNicoll, and the defendant, Claribel Ives; that Claribel Ives is a tenant in common with the plaintiff in said estate, and that she is entitled to the one-half thereof, which she prays may be partitioned.

The defendant, Claribel Ives, in her answer, admits that her grandfather, Peter McNicoll, died, leaving a will devising the estate stated in the petition; but she says it is not true that Peter McNicoll was the grandfather of the plaintiff; admits the death of Henry McNicoll; but she avers that at his death he left this defendant, Claribel Ives, as the sole heir of

his body. She says it is not true and denies that Margaret C. Nicoll is one of the heirs of the body of said Henry McNicoll, deceased; denies that Margaret C. McNicoll has a legal right to, or is seized in fee-simple of one-half or any part whatsovever of the real estate described; denies that the plaintiff is one of the heirs of the body of Henry McNicoll, deceased. Defendant says that as the sole daughter and heir of the body of Henry McNicoll. deceased, she is under the will of her grandfather, Peter McNicoll, deceased, entitled to and is seized in fee-simple of all and, singular, the real estate described in the petition. She denies that the plaintiff is a tenant in common with her in the estate named in the petition.

The defendant prays that the petition of the plaintiff be dismissed, and that she be decreed to be the sole owner of the premises, and the title be quieted against the claim of the plaintiff.

Under the pleadings, both the plaintiff and the defendant claim the real estate described under the last will of Peter McNicoll, the plaintiff claiming one-half thereof, and the defendant the whole of it. Both assert that they are the children and heirs of the body of Henry McNicoll. The plaintiff admits that the defendant is entitled to share the premises equally with her, while the defendant denies that the plaintiff is the daughter of Henry McNicoll, or that she has any right to any part of the premises in question. This controversy is between one born in, and one born out of wedlock. Henry McNicoll was married in 1855, to one Mary Galbraith, and the defendant is the only offspring of such marriage. Shortly after the birth of the defendant, Henry and his wife were divorced.

On December 10, 1867, Lizzie Meyer, the plaintiff's mother, and Samuel P. Reasoner, were married in Newport, Ky., and were afterwards divorced on the 23rd day of April, 1889, his wife filing the petition.

On the 7th day of January, 1875, without having been divorced from plaintiff's mother, Samuel P. Reasoner was married to a Miss Gleave in Columbia, S. C., and now resides there with her and their family.

The plaintiff was born September 10, 1876, on German street, in the city of Newport, in the state of Kentucky, where her mother then resided.

On the 27th day of June, 1889, Henry McNicoll and Elizabeth Reasoner, plaintiff's mother, were married in Covington, Ky., but both of them at that time were residents of, and domiciled in the state of Ohio, and with the exception of two years of their married life, they thereafter lived in Ohio. With the exception of these two years Henry McNicoll had always been a resident of, and domiciled in, the state of Ohio. He died on his farm near Amelia, O., December 19, 1893.

Under the title of descent and distribution, section 4175, Revised Statute of Ohio, reads as follows:

"When a man has by a woman one or more children, and afterwards intermarries with her, such issue, if acknowledged by him as his child or children, shall be deemed legitimate; and the issue of parents whose marriage is deemed null in law, shall nevertheless be legitimate"

What does the word "legitimate" mean? It means to make lawful; to place a child born before marriage on the footing of those born in lawful wedlock; to confer a legal status upon, as to legitimate, a bastard. To invest with the rights of a lawful heir. Anderson's Law Dic., page 611; Am. and Eng. Ency. vol. 13, page 226; Black's Law Dic. 702; 26 Vt. 653, 658.

And it has been uniformly held under similar statutes that the child is thereby rendered legitimate for any and all purposes. Loring v. Thorndike, 5 Allen, 257-263; Munson v. Palmner, 8 Allen, 551, 556; McKamie v. Baskerville, 7 S. W. 194; Williams v. Williams, 11 Lea. 652; 13 Am and Eng. Ency., Law, 227, and note.

The questions in this case involve the paternity of the plaintiff, and the construction of the will of Peter McNicoll.

When the plaintiff was born, Henry McNicoll was a resident of Cincinnati, and an unmarried man. The plaintiff's mother was a married woman, and a resident of the state of Kentucky at the time the plaintiff was born.

The evidence in this case is very voluminous, and we cannot detail what was said and done. We will only refer briefly to the evidence of witnesses.

Where did the plaintiff's mother (then Mrs. Reasoner), and her then husband, Samuel P. Reasoner, reside in 1874, 1875, 1876? Five witnesses living in Columbia, S. C., swear that Reasoner lived there in 1874, 1875 and 1876, and was not absent from said place, and one witness, Mr. Jones, swears he thinks he went out West a year or two.

Mrs. Gleave, mother-in-law to Samuel P. Reasoner, testifies that he, Reasoner, married her daughter on January 7, 1875, and has ever since lived with her, at her home, and never was out of the city except one day, when he went to Atlanta. Reasoner was a soldier, and a statement taken from the official records of the United States Army shows he enlisted in the army on the 13th day of July, 1866, at Springfield, Ill., for a period of three years; and was discharged July 18, 1869, at Newport Barracks, Ky. He again enlisted December 27, 1869, at Cincinnati, O., for a period of five years, and served in Company H., 18 United States Infantry, and was discharged December 27, 1874, at Columbia, S. C. This official statement also shows that he was with his regiment in Columbia, Chester and Abbeville, S. C., from December 8, 1870, to December 27, 1874, the date of his discharge, and that he was present at all roll calls during the above service.

The Wessling family, in whose house Mrs. Reasoner (now Mrs. McNicoll), resided in Newport, Ky., and where the plaintiff was born, and also her neighbors, testified that no one came to her house to see Mrs. Reasoner except Mr. McNicoll, prior and subsequent to the birth of the plaintiff, and it also clearly appears that Mrs. Reasoner was not absent from Newport, Ky., at any time from July, 1869, until long after the birth of the plaintiff. And it is equally clear that Samuel P. Reasoner has not been in the state of Kentucky or the state of Ohio, since January 1870.

The foregoing testimony covers the period of access or non-access between Samuel P. Reasoner and his wife up to the date of the plaintiff's birth. The court permitted a great number of witnesses to testify as to the time and place of the birth of the plaintiff, who were present and what was said and done by Henry McNicoll prior and subsequent to the birth and marriage, even down to the day of his death, tending not only to establish the birth and relationship of the family, but his repeated acknowledgment of the plaintiff as his child under the statute. This line of evidence tended to show that Henry McNicoll visited the Wessling house, where plaintiff's mother then resided, for some two years before the plaintiff was born, at least twice a week, and that on the day of the plaintiff's birth he came to her mother's house and bedside, and took the plaintiff in his arms, calling it "Our Little Birdie," "Our Little Girl"—took it out riding in a baby carriage—supporting the mother and child up to the date of the marriage—that after the marriage, while he lived in Mt. Auburn, Dayton, Ky., and Amelia, O., he introduced her at his own house to his friends and acquaintances, as his child and daughter—defrayed all her expenses, sent her to the public schools, took her to places of amusement, that she was baptized in the church as Margaret Catharine McNicoll, that Henry wrote her a letter January 24, 1893, dated Amelia, O., address-

ing her as "Dear Birdie," and signing it "Your Loving Father;" that near the end of his life he made a will, giving to his wife what little real estate he had, during her natural life and after her death to his daughter, Margaret Catharine McNicoll, in fee-simple.

This kind of evidence, embracing some twenty witnesses, is uncontradicted.

It is urged, with great ability by defendant's counsel, that inasmuch as the plaintiff's mother was a married woman, resided in the state of Kentucky, and that the plaintiff was born there during the marriage relation, that her personal status was one of illegitimacy, and her right to take under this will must be determined by the laws of Kentucky, and not by the laws of the state of Ohio. Story on Conflict of Law, setcions 93 and 105; Smith v. Kelley, 55 Am. Dec. 87 (Miss.); 56 Am. Dec., note by Freeman, page 261; Miller v. Miller, 91 N. Y. 315.

We are asked to follow this rule, and construe this will according to the law of Kentucky, as declared by its courts of appeals in the case of Sams v. Sams, 85 K., page 396. The entire discussion disclosed a wide difference of opinion upon this intricate subject. In many courts the adoption of this rule depended mainly upon the question whether or not it was in conflict with the laws of the state where it was called in question. Other courts reject it altogether, because the policy of the law favors legitimation. Even the statutes of legitimation have produced great changes in the application of this doctrine. This is aptly illustrated in a paragraph in the Am. and Eng. Ency., under the head of Domicile of Origin, vol. 5, p. 861, as follows: "But an illegitimate child has for his domicile of origin the domicile of his mother, at the time of his birth. In the case of a foundling it is the county where he was born or found; and a person born illegitimate, but afterwards legitimated by the subsequent marriage of his parents, stands in the position (after his legitimation) which he would have occupied if he had been born legitimate. His domicile of origin is the county where his father was domiciled at the time of his birth." Blythe v. Ayers, 96 Cal. 532; Munro v. Munro, 1st Rob. App. 492; Jacobs on Domicile, sec. 30, et seq.

If we were at liberty to disregard the rule of construction in Ohio, we might pursue this interesting subject further, but we are precluded by the case of Morris v. Williams, 39 Ohio St. 554; Kanaga v. Taylor, 7 Ohio St. 134; Bank v. McLeod, 38 Ohio St. 180.

We now pass to the law governing the construction of wills. It is well to remember that this is an Ohio will, Ohio real estate, and that the testator lived and died in Ohio.

In Gibson v. McNeely, 11 Ohio St. page 136, the court says: "The will should be construed by the light of the statutory enactments in view of which it must be supposed to have been made."

In Wait's Actions and Defenses, vol. 2, page 646, under the chapter of Domicile, we find the following: "In like manner, the testator's will and every term in it, must be construed according to the law of his domicile, unless there is something to the contrary apparent on the face of the will."

The same rule applies to the ascertainment of the persons who are to take under a will or testament when it is made by words designating a particular class or description of persons. Harrison v. Nixon, 9 Peters, 483 and 492; Jarman on Wills, chap. 1, page 1, 6 ed.; Story on Conflict of Laws, sec. 479 h.; Redfield on Wills, p. 404 and 405; 3 Am. and Eng. Ency. Law, 632, 635 and 637.

What is the law governing the descent and distribution of estates?

Justice Story, in the Conflict of Laws, in section 428, 8 ed., says:

"All the authorities in both countries so far as they go, recognize the principle in its fullest import, that real estate, or immovable property, is exclusively subject to the laws of the government within whose territory it is situate.'

Wharton on Conflict of Laws, sec. 273; Wait's Actions and Defenses, vol. 2, p. 644; 3rd Am. and Eng. Ency., p. 563. But why multiply authorities on ths subject? See the cases of Wright v. Lore, 12 Oho St. 619; Morris v. Williams, 39 Oho St. 554; Price v. Slaughter, 1 Sup. Court Rep., page 429; 27 Ohio St. Kanaga v. Taylor, 7 Ohio St. 134; Fuller v. Steiglitz, 27 Ohio St. 364; 38 Ohio St. 180.

The doctrine of lex rei sitae is as fixed and immovable in Ohio as the land devised in this case. It seems to me that there is an irrepressible conflict between these cases and the Sams case in Kentucky.

Indeed it may be said that the rule of comity between the States and Nations does not extend to real estate. Banks v. McLeod, 38 Ohio St. 180; Wait's Actions and Defenses, vol. 2, page 644; 3d Am. and English Ency., p. 503, 504, 505, 506; Story on Conflict of Laws, sec. 424, 427, 428 and 430.

Section 4175, Revised Statutes, is as plain and clear as language can make it. It is contended that the construction of the law as claimed by plaintiff, will tend to encourage immorality and the violation of the marriage vows.

In Probasco v. Raine, 50 Ohio St. page 390-391, the court observes, "that the courts have no right or power to nullify a statute upon the ground that it is against natural justice or public policy."

And it is now the well settled rule in the construction of statutes in Ohio, that words are to receive their ordinary and natural import, and that the act should be held to embrace all cases coming fairly within its terms. Patton v. Sheriff, 2 Ohio, 395, 7; In re. Hathaway, 4 Ohio St. 383, 5; Hurd v. Robinson, 11 Ohio St. 232, 7; Wright v. Lore, 12 Ohio St. 619; Woodbury v. Berry, 18 Ohio St. 456, 461; State v. Peck, 25 Ohio St. 26, 28; Morris v. Williams, 39 Ohio St. 554; Smith v. Bowman, 41 Ohio St. 37, 52; State v. Archibald, 32 Bull. 307, 310; Deem v. Millikin, 6 Cir. Ct. 357.

Although this question has not arisen and been decided by our own Supreme Court, nevertheless the policy in this state has been outlined, and a construction given favorable to the rights and wellfare of unfortunate children when the other portion of this same statute has been under consideration. Wright v. Lore, 12 Ohio. St. 619; Morris v. Williams, 39 Ohio St. 554.

But it was held many years ago by the Court of Common Pleas of Butler county, in this state, in a case similar to this, that the plaintiff could recover, and the statute was construed as contended for by the plaintiff. I refer to Sutphin v. Cox, I. W. L. M. 346.

This case is identical with the one at bar in every respect excepting that if questions of public and private morals were at all concerned, the circumstances of that case were unspeakably more shocking than the one at bar.

A similar decision has been arrived at, and the right of the plaintiff herein to recover has been sustained in the following cases wherein a statute like our's has been held to include within its terms, children of adulterous connections. Hawbecker v. Hawbecker, 43 Md. 516; Carrol v. Carrol, 20 Tex. 731, 746; Linecum v. Linecum, 3 Mo. 312. Also see the case of Brewer v. Blougher, 14 Peters, 197.

It has been urged with great ability by counsel for defendant, that the plaintiff having been born in Kentucky, her status is fixed by the law of that state, as laid down in the case of Sams v. Sams, 85 Ky. 397.

But as we have observed before, we are controlled in our determina-

tion of this case by the lex rei sitae, and this principle of law is as immovable as the land in controversy.

The Kentucky statute is substantially the same as our's. We therefore can ony consider the Sams case as an authority in point, when we come to construe our own statute. The court of appeals in that case held that the children were not entitled to inherit for the reason that "the statute does not apply when a married man has children by a woman other than his wife, and afterwards marries her, the first marriage tie having been dissolved." ·

That to construe the statute according to its plain import, would be in direct violation of public policy, and the court is horrified at the consequence which might result to the sanctity of the marriage relation, under such a construction of the statute.

But as we have noted above, courts are not at liberty to consider questions of public policy, when they come to construe statutes. The reasoning, by the court of appeals, in the Sams case, is legislative, not judicial. It may or may not be good ground for showing why such a law should not be passed, but when enacted by the legislature the court has but one duty to perform, viz: to construe it according to its plain terms.

The Sams case as an authority, is almost, if not entirely, destroyed by a decision rendered by the same court at the same term, and only sixty days prior to the Sams case. We refer to Harris v. Harris, 85 K., page 4.

It is impossible to reconcile these two decisions. In the one case the court's sense of morality is shocked. It is horrified at the consequences which may result under the plain provisions of this statute to the sanctity of the marriage relation, and therefore say the child shall not be legitimate, and, of course, cannot inherit.

In the other case the court, in its anxiety to protect the innocent offspring and to enable them to become the recipients of the father's property, say to the parents, if to the crime of adultery you will add the crime of bigamy, your children shall be legitimate, and entitled to inherit your property.

The Sams case is not the sole adjudication of this interesting question; there are a number of other cases, cited above, which are in direct conflict. The law of Ohio, and the weight of authority are against it.

There is no well founded conflict in the testimony in this case.

Henry McNicoll was married June 27, 1889. His marriage is conceded. His acknowledgment of the plaintiff as his daughter, is beyond question.

The deposition of John Young has been read in this case. The intercourse to which he testfiies, if true, would not alter my conclusion. We cnnot infer acts of criminality, especially where they are positively denied by the mother as they have been in this case.

Keeping in mind the laws of nature, by no stretch of the imagination can John Young' if his testimony is true, be said to be the father of the plaintiff.

We are therefore of the opinion that the evidence and the law warrant us in coming to the conclusion that Henry McNicoll is the father of the plaintiff; that he married the mother and afterwards, even down to his death, acknowledged the plaintiff to be his daughter.

Under the evidence and the law we are bound to conclude that the plaintiff is the daughter of Henry McNicoll, and that she answers to the description of the heirs of the body to whom the will devises the real estate in question.

Decree accordingly.

Robert Ramsey, Joseph W. O'Hara and John Nichols, for plaintiff.
Kittredge & Wilby, for defendant.