## CATHERINE SCANLON and Others vs. JOHN J. WALSHE and Others.

*Presumption as to Legitimacy of Children Born in Wedlock.—Proof of Illegitimacy.—Estoppel of Parent.—Legitimation by Subsequent Marriage.—Exceptions to Evidence in Equity.*

A child born in lawful wedlock, when non-access of the husband is not established, is presumed to be legitimate, and neither the evidence of the mother nor of an adulterer is admissible to prove that the child is not the offspring of the husband.

In a bill for a divorce from her husband, S., the plaintiff, alleged that certain children were the issue of the marriage, and the decree awarded their custody to her. Subsequently, in a petition for a change of name, the plaintiff averred that after being divorced she had married W., and asked that the names of the children "born to her and her said husband," S., might be changed to W., which was accordingly ordered. Some years afterwards, upon the death of W. intestate, plaintiff claimed that these children were not the offspring of her former husband, S., but of W.; that after her marriage with W., he acknowledged them to be his children, and that consequently, under Code, Art. 46, sec. 29, such marriage and acknowledgement made them the legitimate childrem of W. At the time the children were born, it was not shown conclusively that S. had no access to plaintiff. *Held,*

1st. That the evidence of the plaintiff and the declarations of W. were not competent to show that the children were not the legitimate children of S., and also that the evidence generally was not strong enough to overcome the presumption expressed in the maxim, *pater est quem nuptiae demonstrant.*

2nd. That the marriage of the plaintiff and W., and the latter's acknowledgment of the children, were not, under these circumstances, evidence of their illegitimacy.

3rd. That in cases under the above statute, the fact of illegitimacy must be first proved, and then marriage and acknowledgment may be offered to show paternity.

4th. That the plaintiff was estopped, by her allegations in the bill for a divorce and in the petition for a change of the names of the children, from contradicting her statements then made, that these were the children of S., and the estoppel also applies to W., since he was the instigator of both proceedings and in a position to know the facts.

In filing exceptions to testimony in equity cases, it is not necessary to set forth all the reasons and grounds on which the exceptions are based.

Appeal from a *pro forma* order of the Circuit Court of Baltimore City, overruling the exceptions of the appellants to an Auditor's Account distributing the sum of $25,781 to John Joseph Walshe, Augustina Cecilia Walshe and Maria Concezione deGiorgio, who claim as the children and heirs at law of David J. Walshe, deceased. The question on this appeal was whether the said distributees were the children of Walshe.

On November 6, 1875, Carlotta Walshe, then Carlotta Simmonds, filed a bill in the Circuit Court of Baltimore City, for the purpose of obtaining a divorce *a vinculo* from her husband, Florian V. Simmonds, and the exclusive care, custody and control of their six children, whose names and ages are stated as follows: Edward E. Simmonds, aged fifteen years; Attela E. Simmonds, aged thirteen years and eight months; Maria Carlotta Simmonds, aged eleven years; John Joseph Simmonds, aged nine years; Maria Conceptione Simmonds, aged seven years; and Maria Augustina Simmonds, aged five years. Mrs. Simmonds alleged in her bill that she and Florian V. Simmonds were married in the year 1858, since which time, until two years prior to filing her bill, they had lived together as husband and wife; that about two years before filing her bill, she became aware that her husband had committed adultery with various women at various times and places, and that since said acts of adultery came to her knowledge she ceased to live with him or to have any communication with him, and that her own conduct had always been proper and without reproach. She then alleged that by the said marriage she had six children, who are the six children above named. To this bill an answer was filed by the husband, in which he denied the acts of adultery alleged by her, and charged that since the month of March, 1868, she had committed repeated acts of adultery with an admitted paramour, and that while he ad-

mitted the birth of children as alleged, yet he could not admit that they were all the fruits of said marriage.

On November 26, 1876, a decree was passed divorcing the plaintiff *a vinculo* from Simmonds and awarding to her the custody of the children. On August 2, 1877, Carlotta Simmonds was married to David J. Walshe. On July 31, 1883, she filed a petition in the Circuit Court of Baltimore City, reciting her divorce and subsequent marriage, and that the custody of the children born to her and her said husband, Simmonds, had been awarded to her, and praying that the names of John Joseph, Augustina Cecilia and Concezione Maria, might be changed from Simmonds to Walshe. This petition was sworn to by the petitioner, and an order was passed making the change prayed for.

David J. Walshe died on May 26, 1891, leaving a last will and testament, dated the 21st day of May, 1878. There is a codicil bearing date the 5th day of November, 1883. In item 1, after devising and bequeathing a life-estate in one-third of all his property to his wife, he devised and bequeathed the same after her death " to be equally divided between *her* three children, John Joseph, Maria Concepcion and Augustina Cecilia." In item 2 he provided that in the event of the dissolution of the firm of D. J. Walshe & Co., one-third of his interest therein shall go to his wife, and " the remainder to *her* three children," naming them ; and in the event of the death of his wife before such dissolution, *her* three children to take the whole interest. In item 3 the sum of thirty thousand dollars is left to the executors in trust to invest ten thousand dollars for each of the children aforementioned, to-wit, John Joseph, Maria Concepcion and Augusta Cecilia. In item 5 he bequeaths his pictures, paintings and books to the daughter of my said wife, Maria Concepcion.

This will was not operative as to real estate owned by Walshe at the time of his death, and the bill in this case was filed by his widow for a sale of the same, distribution of the proceeds, &c. The appellees, in order to establish

that they were the children of David J. Walshe, produced in evidence several letters from him to them, in which he wrote to them as his children; testimony of various persons as to his frequent acknowledgement of them as his children; his having them to live with him, educating them, introducing and entering them at the schools in which they were educated in Italy as his children, and always treating them as such, together with newspaper clippings showing that at the marriage of Maria Concezione he gave her away as his daughter and presented her with a dowry of $10,000; also, the testimony of Carlotta Walshe, their mother, who testified positively that they were David J. Walshe's children. All of this testimony was excepted to by the appellants. The appellants, to sustain the issues on their part, introduced in evidence the papers in the divorce proceedings in the Circuit Court of Baltimore City, in the case of *Carlotta Simmonds* v. *Florian V. Simmonds*, and also the *ex parte* proceedings in the same Court by Carlotta Walshe, for the change of the names of the appellees.

The cause was argued before ROBINSON, C. J., McSHERRY, FOWLER, BRISCOE and ROBERTS, JJ.

*Richard S. Culbreth* and *Richard Bernard* for the appellants.

The decree of the Circuit Court of Baltimore City divorcing Carlotta Simmonds from Florian V. Simmonds, and awarding the custody of their children to her, is of a conclusive nature, and the parties whom it affects are not permitted to contradict it. *Duchess of Kingston's case*, Smith's Leading Cas., 9th ed., 2010, note.

The facts established by the decree are: 1. That the marriage of the parties was a legal marriage. 2. That the husband, as alleged in the bill, committed adultery. 3. That the wife did not commit adultery, but that, as alleged in the bill, her conduct had always been proper and without reproach. 4. That the children named in the bill are the legitimate children of the plaintiff and defendant, of whom

the plaintiff was awarded the custody. The position in which the parties and their children are placed by the decree, is what is called their *status*. The decree was passed on the 22d of November, 1876. It has stood without attack for collusion or fraud for nearly twenty years. Under the circumstances, therefore, it is a decree *in rem*, the essence of which is that binding one it binds everybody, so that no one, parties or strangers, can controvert it. *Smith's Leading Cases*, 9th ed., pp. 2028, 2046, 2051, 2084; 2 *Bishop on Marriage, Divorce and Separation*, section 1580; *Freeman on Judgments*, sections 159, 313, 586; 1 *Greenleaf on Evidence*, sections 544, 525, 545 ; 2 *Black on Judgments*, section 803 ; 1 *Herman on Estoppel*, section 296 ; *Coke*, 1 Inst. 352*b*; *Hood* v. *Hood*, 110 Mass. 465, citing *Burlen* v. *Shannon*, 3 Gray, 387, and *Smith* v. *Smith*, 13 Gray, 209.

The children are bound by the decree, even though the effect of it be to bastardize them ; and this is true of a child *in ventre sa mere* at the time the decree of divorce is passed. 2 *Bishop on Marriage, Divorce and Separation*, section 1584; *Perry* v. *Meddowcraft*, 10 Beav. 122 ; *Harrison* v. *Southampton*, 17 Eng. L. and Eq. 364 ; *Harrison* v. *Southampton*, 21 Eng. L. and Eq. 343.

By the authorities cited, the children are bound by the decree in the sense that it is conclusive of their legitimacy or illegitimacy, whichever status it may declare. Children, after the nullity decree, are conclusively illegitimate, equally whether the marriage was voidable or void. *Bishop on M. D. & S.*, sec. 1602. A *fortiori* are they conclusively legitimate when so declared, every intendment of law and fact being made in favor of that status. *Gaines* v. *Hennen,* 24 Howard, 609

An important fact to be noted in this connection is that two months after the order of the Circuit Court changing the names of the children was passed, Mr. Walshe added a codicil to his will, which is entirely consistent with the averment in the petition that the children, whose names

were changed, were the children of Mrs. Walshe by Florian V. Simmonds, her former husband, the will, to which the codicil was added, describing the children as *her* children, and one of them as *her* daughter.

Mr. and Mrs. Walshe knew at the time the bill for divorce and the petition for the change of names were filed, all that could ever be known in regard to the paternity of the children. In both papers, she, with his knowledge and he actively participating in the act, declared them to be her children by Florian V. Simmonds, and she alleged that her life had always been proper and without reproach—a fact which, if true, excluded the possibility that they were her children by any one else. And the Court, by its decree, so found. Then they will not be permitted, she by her testimony, or he by his declarations and letters, to deny the facts so alleged and proved, for to do so would be to impute to them a fraud upon the administration of justice. *P. W. & B. R. R. Co.* v. *Howard*, 13 Howard, 307. "A man shall not be allowed," says the Court of Exchequer, in *Cave* v. *Mills*, 7 H. & N. 927, "to blow hot and cold, to claim at one time and deny at another." *Edes* v. *Garey & Lanahan*, 46 Md. 41; *Hall* v. *McCann*, 51 Md. 351; *Chacquote* v. *Ortel*, 60 Cal. 601.

If the decree of divorce be conclusive of the status of John Joseph, Maria Concezione and Augustina Cecilia, as the children of Carlotta Walshe by Florian V. Simmonds, her former husband, so that they cannot question or controvert it, all the testimony in the record tending to show that they are the children of David J. Walshe, is, of course, inadmissible. The appellants therefore except to the testimony of Mrs. Simmonds, because: 1. She is estopped by decree of divorce from averring against it, whether it be a decree *in rem* or *in personam;* and 2. Her testimony is against decency, morality and public policy; and 3. Her testimony is of no value in consequence of the conflicting statements made by her, and of the fact that the essential parts of it are contradicted by reliable witnesses.

*Henry C. Kennard*, for the appellees.

Whether the appellees were in fact the children of David J. Walshe, and whether they were so acknowledged by him after his subsequent marriage to their mother, together with the further question whether section 29, Article 46 of the Code (2d vol., page 813), applies to cases of illegitimate children born of a married woman during coverture, constitute the questions to be decided on this appeal.

One of the exceptions of the appellant is based upon the inadmissibility of Mrs. Walshe's testimony to prove non-access. The rule as to proof of non-access was adopted mainly for the benefit of the children. The language of the old authorities was that it was not admissible to *bastardize*, and so they laid down the rule that birth during wedlock was a *conclusive* presumption of legitimacy. They ignored the fact that one result of the rule would probably be to establish a falsehood, and impose upon the husband the support of a child not his. As the illegitimate child of a married woman is as much a bastard as if it was born of a single woman. *Rex* v. *Luffe*, 8 East. 203 ; *Gera* v. *Clanbar*, 57 L. T. (N. S.) 822.

In the *Banbury Peerage case* (1 Sim. & Stu. 153), a number of questions were submitted to the Judges, and answered in a manner totally at variance with the strictness and harshness of the earlier decisions. Later, still more liberal rules were adopted, and in the celebrated and much litigated case of *Morris* v. *Davis*, 5 Clark & Fin., 214-15-18, 241 to 244, the present doctrine is thus stated: "In the absence of *all* evidence, either on the one side or the other, the law would presume that such sexual intercourse did take place," *i. e.*, between husband and wife, if there was proof of opportunity of access. In speaking of the *Banbury Peerage case*, it says: "All that is said by the Master of the Rolls, is that the Court, which is to be satisfied that sexual intercourse did not take place, must be so satisfied not upon *a mere balance of probabilities.*" See also 2 *Kent's Com.* 211 ; *Schouler's Domestic Relations*, sec. 225 ; *Goss* v. *Froman*, 89 Ky. 318 ;

*Cannon* v. *Cannon*, 7 Humph. 411; *Herring* v. *Goodman*, 43 Miss. 396; *Bosville* v. *Atty.-General*, L. R. 12, P. D. 177-183; *Wright* v. *Hicks*, 12 Ga. 159; *Barnum* v. *Barnum*, 42 Md. 300-304; *Shuler* v. *Bull*, 15 S. C. 421; *Wilson* v. *Babb*, 18 S. C. 68.

And in this connection it is clear that whatever view this Court may take as to the admissibility or non-admissibility of the testimony of Mrs. Walshe, for the purposes for which it was introduced, there is no rule or authority which will exclude the testimony of Mr. Walshe, unless, indeed, the Court should hold that estoppel applies. In this view, it becomes immaterial whether Mrs. Walshe's testimony is excluded or not. So far as she is concerned, it is simply a question as to whether she is a competent witness to *prove* a fact; but, if this Court is satisfied from other competent proof that the fact exists, nothing more is required. It is to be proved so as to satisfy the Court of its *truth*, like any other fact, by competent testimony. *Wilson* v. *Babb*, 18 S. C. 68 to 72; *Morris* v. *Davis*, 5 Clark & F. 241, &c.

Mr. Walshe's acknowledgements and acts are not only competent, but conclusive, since they are not and cannot be denied. Outside of estoppel, this is undisputed testimony as to the fact of the paternity of the appellees, and of a kind as conclusive as is capable of production in proof of such a question. Is there any other possible theory than that they are, in fact, his children, which can account for the difference of treatment shown them and the three older children? If the rule of exclusion applies at all, it can only apply to Mr. and Mrs. Simmonds, and not to Mr. Walshe; and upon the undisputed testimony of the last alone, it is impossible that there can be any real doubt in the mind of anyone as to whose children the appellees are.

It is "certainly competent" for Mrs. Walshe "to prove the fact of her connection with" David J. Walshe during her marriage with Simmonds—to charge him "as the real father of the child." This, too, if she were the only witness, for her right to testify as to this adulterous intercourse

is put expressly upon the ground of *necessity*, because it is probable that she and the adulterer are the only persons who know anything about it.   While in *Rex* v. *Kea*, 11 East. 132, it is stated that there were probably more witnesses than the wife in *Rex* v. *Luffe*, 8 East. 202, to prove non-access, and that she alone was not competent—the rest of that decision is approved.   Her testimony is also clearly admissible to prove the legitimacy of the appellees.   *Rex* v. *Bramley*, 6 T. R. 331.

As to the objection to all the testimony of appellees on the ground that, by the decree in the divorce case of Carlotta Simmonds, and the *ex parte* proceedings to change the names of the appellees, they are estopped from denying that they are the children of Florian V. Simmonds, and, as a consequence, from setting up that they are the children of David J. Walshe, the appellees contend that the records in those cases are inadmissible as against them, as being *res inter alios acta*.   That neither they nor David J. Walshe were parties to those proceedings, and the only question involved in them was whether Mrs. Simmonds was entitled to a divorce.   That the property of Mr. Walshe was in no way involved in them, nor were they, in any way, affected by the question of whether there were or were not children.   The bill for divorce, not being sworn to, was, at most, the mere statement of the solicitor.   *Mobberly* v. *Mobberly*, 60 Md. 379.   The sole question involved in this case is as to the right of the appellees to the property of D. J. Walshe, a question in no way involved in the divorce proceeding, which not only was not essential to the adjudication in those proceedings, but could not be so adjudicated.   The parties are different and the subject-matter is different, and those two facts alone would seem to be conclusive of the point. If the appellees are correct in this the testimony as to Mr. Walshe's acknowledgements is in without exception and without denial or attempted denial of their truth.

The remaining question is whether, admitting the admissibility of the testimony adduced—which is undisputed on

all material points—do the provisions of the statute (2 Code, Article 46, section 29, page 813), apply to a case like this.  Do its terms embrace bastard children born during their mother's coverture.  There is certainly no restriction in the statute.  Its language applies to all women, *married or single*.  It is as broad and all-embracing as it was possible to make it.  " If *any* man shall have a child by *any* woman."  There is no canon of construction that can interpret *"any"* to mean *single*.  If such had been the legislative intent, it would have in terms confined its application to *"any single woman."*  The language used is equally general in its application to women as to men, and is too plain to leave any room for interpretation ; and the appellees claim that even if it was *res nova*, there could not be any doubt as to its application.  This precise question, was, however, decided so far back as 1864, by JUDGE WILLIAM ALEXANDER, sitting in the Circuit Court of Baltimore City, in the case of *Hyde* v. *Rundles*, to be found in the notes to *Alexander's British Statutes*, pages 32-3.

FOWLER, J., delivered the opinion of the Court.

It is fortunate that Courts of Justice are seldom called upon to consider a case in which the facts are so shocking to every sense of decency and morality as those presented by the record now before us.  We shall not attempt, in this opinion, to discuss with any particularity the testimony which, we think, justifies this remark, for the view which has been forced upon us, after careful consideration, renders such an uninviting task altogether unnecessary.

On the 26th March, 1891, David J. Walshe, of Baltimore City, died, leaving a will disposing of his personal property and one-third of his real estate and intestate as to the balance of his real estate, which latter consisted of, by far, the larger and more valuable part of the property known as the Mansion House, on the northwest corner of Fayette and St. Paul streets, in said city.  A bill was filed in the Circuit Court of Baltimore City by Carlotta

Walshe, for the sale of said real estate, against a number of persons claiming to be heirs at law of her husband, David J. Walshe, three of them being her own children, born while she was living in lawful wedlock with a former husband, and the others being sisters and the children of a deceased sister of said Walshe. Proper proceedings were had, and, by agreement of parties, the whole property was sold for the sum of seventy thousand dollars, which sale was duly confirmed. By a *pro forma* order, the Court below ratified Auditor's Account B, by which the sum of $25,795.41 was allowed to three children of the plaintiff as their share of the proceeds of sale. From this order the sisters and the children of a deceased sister of Walshe have appealed. And the question is, who are the heirs at law of David J. Walshe?

There are two sets of claimants, first, two sisters and several nephews and nieces, and secondly, the plaintiff's three children, the youngest of whom is about twenty-four years of age, who, although born while their mother was married to and living in lawful wedlock with her first husband, Florian V. Simmons, from whom she was divorced, claim to be the children of said Walshe, whom she afterwards married, and his heirs at law, because subsequent to their birth their mother and their alleged father married, and he acknowledged them to be his children.

A contention, whose foundations are so contrary to good morals, public policy and the presumption of law, can be maintained only by some *statute* which not only introduces "a new law of inheritance," as our own statute does (*Brewer v. Blougher*, 14 Pet. 178, opinion by CH. J. TANEY), but which, to bring this case within its terms, must also abrogate some rules of evidence which we are not inclined either to weaken or destroy. The statute upon which the appellees, the children of Carlotta Walshe rely to maintain their contention, is section 29, Article 46 of the Code, which provides that "if any man shall have a child or children by any woman, whom he shall afterwards marry, such child or children, if acknowledged by the man, shall, in

virtue of such marriage and acknowledgement, be hereby
legitimated and capable in law to inherit and transmit
inheritance as if born in wedlock. This section was be-
fore this Court for construction in the case of *Hawbecker*
v. *Hawbecker*, 43 Md. 516, where a married man had
by his wife four children born in lawful wedlock, and during
the life of his wife he also had six children by another
woman. His wife died, and he subsequently married the
mother of the last mentioned children, whom he acknowl-
edged as his, and treated them as he did the children of his
first wife. It was very earnestly contended in that case,
that the section above quoted should not be construed so as
to include within its terms a case in which children are con-
ceived and born when their parents are under impediment
to marry. But it was held that although the Legislature,
no doubt, in thus mitigating the severe rule of the common
law, intended to hold out to the surviving parents an induce-
ment to marry, and thus put a stop to the further illicit
intercourse between them, yet "the main purpose and intent
of the enactment   *   *   *   was to remove the taint and
disabilities of bastardy from the unoffending children, *when-
ever their parents did marry*, without regard to the deepness
of guilt on the part of their parents." And in concluding
the opinion, the language of CHIEF JUSTICE TANEY in the
case of *Brewer* v. *Blougher, supra*, to the same effect in
relation to the same provision of law, is quoted approvingly.
We said, "the Legislature has not seen fit to make any ex-
ceptions to its operation. Its terms embrace *every case*
where "*any man* shall have a child or children by *any
woman* whom he shall afterwards marry." *Hawbecker* v.
*Hawbecker, supra*.

It will be observed, however, that in the case we have last
cited, there was no question whatever made as to the paternity
or illegitimacy of the children who were admitted to have been
born out of wedlock. It was assumed that the reputed was
the real father, and that the children were illegitimate; and
the only question was whether the law was applicable to

the admitted facts.    But here we have a different condition.
Indeed this is the very opposite to *Hawbecker's case.*    For
while the force of the broad terms of the law is here ad-
mitted, it is contended that the foundation facts—the facts of
illegitimacy and of the alleged paternity—are not estab-
lished at all, because, first, the witnesses are incompetent,
and secondly, even if competent, their evidence is not of that
*strong, distinct, satisfactory* and *conclusive* character which is
required to overcome the presumption expressed in the
common law rule *"Hæres legitimus est quem nuptiæ,"* or
another expression of the same rule, *"Pater est quem nuptiæ
demonstrant."*    The old rule in England was, and also in
this country, 1 *Greenleaf on Evidence,* sec. 28, that this pre-
sumption of legitimacy was conclusive, but it is said the
Courts did not long permit so violent an estoppel.    1 *Bishop
on Marriage, Divorce and Separation,* sec. 1170.    This legal
presumption has been characterized as the foundation of
every man's birth and status and of the whole fabric of
human society, and no where has its full force and extent
been so fully acknowledged and so well expressed, as in the
case of *Hargrave v. Hargrave,* 9 Beav. 553, by LORD
LANGDALE, the then Master of the Rolls, decided in 1846.
He says, "A child born of a married woman is in the first
instance presumed to be legitimate.    The presumption thus
established by law is not to be rebutted by circumstances,
which only create doubt and suspicion ; but it may be
wholly removed by *proper* and *sufficient* evidence showing
that the husband was, 1. Incompetent.    2. Entirely absent,
so as to have no intercourse or communication of any kind
with the mother.    3. Entirely absent at the period during
which the child must, in the course of nature, have been
begotten, or 4. Only present under such circumstances as
afford clear and satisfactory proof that there was no sexual
intercourse."    "Such evidence as this," says his Lordship,
"puts an end to the question and establishes the illegitimacy
of the child of a married woman."    And in the same case it
was held that where opportunities occurred for sexual inter-

course between the husband and wife, and there was no proof of his impotency, *no evidence can be admitted to show that any man other than the husband may have been or probably was the father of the wife's child.* It was said in *Crawford* v. *Blackburn*, 17 Md. 56, that the declarations of the parents were not admissible to defeat the consequences of marriage, such as that the children are bastards. And LORD MANSFIELD said in *Goodright* v. *Moss*, 2 Cowp. 594: "It is a rule founded in decency, morality and policy that the father and mother shall not be permitted to say, after marriage, * * * that their offspring is spurious." And, in our opinion, the testimony of the adulterer, when offered for the same purpose, should likewise be excluded, especially so in all cases in which it appears that the proof does not exclude the possibility or probability of access of the husband to the wife. In such cases, as LORD LANGDALE said in *Hargrave* v. *Hargrave, supra,* there being no proof of impotency, *no evidence* will be admitted to show illegitimacy. To this extent, at least, we think the presumption of the legitimacy of the child of a married woman should be conclusive.

The mere fact of marriage and acknowledgement should not, under the facts of this case, be received as proper evidence of illegitimacy. The fact of illegitimacy should *first* be proved, and then the marriage and acknowledgement may be offered to prove paternity. And so it was held in *Grant* v. *Mitchell*, 83 Me. 27. And in *Hemenway* v. *Towner*, 1 Allen, 209, the declarations of the adulterer offered to show illegitimacy of the child of a married woman were excluded, the husband and wife having lived together as such until six months next before the birth of the child. It is true these two cases last cited were decided upon statutes not altogether like ours, but the questions decided were questions of evidence, and we think what was said in those cases on this subject are particularly applicable to this case. Now, the only testimony before us which can be properly resorted to to prove illegitimacy is that of the plaintiff, Car-

lotta Walshe, which, as we have seen, is inadmissible for that purpose   At the most, her testimony may be offered to show she was untrue to her husband.   1 *Bishop M. D. and Separation*, sec. 1179.   And so also as to the declarations and letters of David Walshe, which appear to have been offered to prove acknowledgement of the children. Neither will be admissible to show the husband is not the father, if he had or could have had access as indicated in *Hargrave* v. *Hargrave, supra,* and that he could have had access, we think, is clearly shown in this case, for the separation did not occur until several years after the birth of the youngest child.

But the testimony of Carlotta Walshe, as well as that of the adulterer, if he were alive, would be inadmissible to show bastardy, and equally so his declarations, because they are both estopped to swear to a state of facts in conflict and inconsistent with the proceedings for divorce and for change of name of her three younger children.   She will not be allowed now to come into Court and recklessly contradict what she alleged in the one and swore to in the other.   *Edes* v. *Garey, &c.,* 46 Md. 41 ; *Hall* v. *McCann,* 51 Md. 351 ; *P. W. & B. R. R. Co.* v. *Howard,* 13 Howard, 335.   And it appearing that he was the instigator of both proceedings and in a position to know the truth, the estoppel should work equally against him, his declarations and his letters.

In the supplemental brief on the part of the alleged children of Walshe filed a few days ago, it is suggested that the objections now relied on in this Court to most of the testimony are not covered by the exceptions filed by the appellants below, and David J. Walshe is spoken of as a witness whose testimony was objected to below only on the ground of estoppel.   It will, however, be observed that *he* is not a witness.   His declarations, verbal and written, were offered, and the testimony of all the witnesses who testified to the former, as well as the latter, which were offered in evidence, all of which was offered to show recognition of the children, was excepted to on the ground of estoppel.   And while it

may be that the estoppel of the divorce and other proceedings may not go to the extent urged by the appellants, yet, as we have already said, both David J. Walshe, if living would be, and Carlotta Walshe is thereby estopped to take positions inconsistent therewith.   And we think the exceptions, on the ground of estoppel, filed below, fairly cover the *additional grounds* of estoppel urged in this Court. For while it is required that every exception, in order to be availed of in this Court, must be reduced to writing and filed in the Court below, at least, before the hearing there begins, yet it is not necessary to set forth all the reasons and grounds on which such exceptions are based.   But we think it unnecessary to prolong this discussion.   It is conceded the exceptions filed below cover the testimony of Carlotta Walshe as to non-access, and having sustained the exception based on this objection, her testimony as to any collateral fact, for the purpose of proving non-access, would also be inadmissible.   *Weightman on Marriage and Legitimacy*, 144.

And it must be remembered that we have been considering what is the true rule by which to measure the amount and character of evidence required to prove the child of a married woman to be a bastard, which child is born while the mother is living in lawful wedlock with her husband. And although in this particular case the woman herself, and her children, the youngest of whom is twenty-four years old, are trying to establish the illegitimacy of the children, and for that purpose are asking us to destroy or weaken this rule, which the experience of many years and the wisdom of eminent Judges have sanctioned, we must remember, that such a position is seldom occupied by either the mother or her offspring.   She and they are more frequently interested in guarding and enforcing the rule which protects the rights of legitimate rather than the rights of illegitimate children.

We feel bound to say, however, that if all the testimony we have thus excluded were properly before us, we could

not, while giving full force and effect to the legal presump-
tion of legitimacy, and in the absence of that *strong, dis-
tinct, satisfactory* and *conclusive* testimony required to over-
come that presumption, do otherwise than reverse the *pro
forma* order appealed from.        .        ·

> *Order reversed and cause remanded,
> costs to be paid out of the fund in
> hand of the trustees..*